UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL GIANNASCA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PEPSICO, INC. and PEPSICO BEVERAGE SALES, LLC <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Michael Giannasca ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendants PepsiCo, Inc. and Pepsico Beverage Sales, LLC (collectively "Pepsi" or "Defendant") for anticompetitive and unfair and deceptive business practices associated with the manufacture, marketing, and sale of Pepsi soft drinks (the "Products"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon his information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

<u>NATURE OF ACTION</u>

1.      This is a class action against Defendant for anticompetitive and unfair and deceptive business practices associated with the marketing, manufacture and/or sale of its soft drinks (the "Products"), which includes providing Walmart, Inc. ("Walmart") with unfair price advantages to the disadvantage of other retailers of Defendant's Products. These advantages include promotional payments, allowances, and services to Walmart that are not available to other retailers on proportionally equal terms. Because of Defendant's unfair promotions and price discrimination resulting in artificially inflated prices, Walmart is able to charge lower prices for the Products compared to Plaintiff and class members causing them to lose significant business.

Creating an artificial competitive advantage for Walmart exclusively, in this manner, violates the Robinson-Patman Act as well as Massachusetts state law.

2.      Plaintiff brings his claims against Defendant individually and on behalf of a class of all other similarly situated purchasers of the Products for violations of the Robinson-Patman Act, 15 U.S.C. § 13 and the Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, *et. seq*.

**PARTIES**

3.      Plaintiff Michael Giannasca is, and at all times relevant to this action has been, a resident of Chelsea, Massachusetts and a citizen of Massachusetts.  On May 6, 2025, May 13, 2025, and May 27, 2025, Mr. Giannasca made large purchases for multiple cases of the Products to his store, Michael G's Handcrafted Italian, located at 1066 Revere Beach Pkwy, Revere, MA 02151.  Plaintiff purchased the Products directly from Defendant Pepsico Beverages Sales, LLC in interstate commerce.  However, Mr. Giannasca did not have access to the promotional payments, allowances, and services that Defendant made available to Walmart in contemporaneous sales.  Defendant's unfair and anti-competitive practices created an uneven playing field that forced Mr. Giannasca to charge higher prices for the Products than Walmart.  If not for Defendant's practices, Mr. Giannasca would have been able to sell more of the Products than he in fact did.  Mr. Giannasca's business therefore would have earned higher profits.

4.      Defendant PepsiCo, Inc. is a North Carolina corporation with its principal place of business at 700 Anderson Hill Road, Purchase, New York 10577.  Defendant markets and distributes the Products throughout the United States.  Defendant sells its products to consumers on websites and through retail stores nationwide.  Defendant owns or controls multiple iconic beverage and food brands worth over $1 billion, including Pepsi-Cola, Frito Law, Mountain Dew,

2

Starbucks (under license), Gatorade, and Aquafina.  In 2023, Defendant reported global net revenues of over $91 billion.

5.      Defendant Pepsico Beverage Sales, Inc. is a wholly-owned subsidiary of Defendant PepsiCo, Inc.  It is a Delaware company with its principal place of business at 700 Anderson Hill Road, Purchase, New York, 10577.  On information and belief, it is the successor to the Pepsi Beverages Company, which was formed in 2010 as a wholly-owned subsidiary of PepsiCo, Inc. following PepsiCo's acquisition of The Pepsi Bottling Group, Inc. and PepsiAmericas, Inc., which had previously been independent Pepsi bottlers.

6.      Defendant acted to perpetrate the acts described herein. At all times relevant to the allegations in this matter, Defendant acted with the knowledge regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the conduct alleged violates the Robinson-Patman Act, 15 U.S.C. § 13.

8.      This Court also has supplemental jurisdiction under 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

9.      This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District and because Defendant resides in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant

does substantial business in this District and a substantial part of the events giving rise to Plaintiff's

claims took place within this District and because Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

### I.    Defendant's Business Activities

11.     The manufacture and sale of non-alcoholic soft drinks in the United States is a $150

billion industry.  There are two major categories of non-alcoholic soft drinks: carbonated soft

drinks and non-carbonated soft drinks, which includes beverages such as energy drinks, juice,

sports drinks or "isotonics," dairy or dairy substitute drinks, tea, coffee, and bottled still water.

12.     Defendant is one of the largest manufacturers and marketers of soft drinks in the

United States.  Defendant is organized into seven divisions, including PepsiCo Beverages North

America ("PBNA").  PBNA operates Defendant's soft drink business in the United States and

Canada.  In 2023, PBNA generated $27.6 billion in revenue.  Defendant distributes its soft drinks

to retailers through its bottler network, which comprises Defendant PepsiCo, Inc.'s wholly owned

bottling subsidiary, Defendant Pepsico Beverage Sales, Inc., and several dozen franchise bottlers.

Defendant directly controls the wholesale pricing provided to its retailer customers by its wholly

owned bottler subsidiaries.

13.     Defendant's customers include retailers in several channels, such as grocery stores,

drug stores, convenience stores, discount/dollar stores, mass merchandisers, and membership

stores.  Retailers purchase Defendant's products from Defendant and its bottlers and then re-sell

those products to consumers.  Retailers within each channel compete with one another. Retailers

in one channel also often compete with retailers in other channels in the sale of soft drinks.

14.     Defendant's brand recognition is universal.  Many food and beverage retailers

consider Defendant's soft drinks important to carry.  Failing to carry Defendant's soft drinks can

put them at a competitive disadvantage to retailers that do carry Defendant's products.  Defendant

distributes consumer products to retailers throughout the United States, who then sell the products

to consumers.

15.    Defendant's products and brands include Pepsi-Cola, Mountain Dew, Gatorade,

and Aquafina, among others.

16.    While Defendant's brand still remains a household name, sales have decreased 32%

between 2010 and 2023, and it has fallen behind Dr. Pepper.

17.    Walmart is Defendant's largest customer.  Walmart (including Sam's Club)

represents approximately 11% of Defendant's total net revenue.  In North America, Walmart

represents approximately 17% of Defendant's total net revenue.

18.    As Defendant's largest customer and as the leading retail company, Walmart uses

its leverage to enter into supply agreements directly with soft drink manufacturers, including

Defendant.  To keep Walmart happy, Defendant provides Walmart with a slew of promotional

payments, allowances, and services, benefits not provided to Walmart's competitors on

proportionately equal terms.

## II.    The Defendant Provides an Unfair and Competitive Advantage to Walmart

19.    As Defendant's largest source of sales and revenue, Walmart regularly transacts

with Defendant for the sale of Defendant's products.  These transactions include the sale of

Defendant's products as well as promotional deals.

20.    Defendant provides Walmart with promotional payments and allowances intended

to promote the resale of Defendant's soft drinks.  These payments and allowances from Defendant

are not available to competing retailers and are exclusive to Walmart.

21.    Defendant provides special deals to favored retailers.  Discounts like those Pepsi provides to Walmart are one of the reasons why independent grocers struggle to survive and food prices are high.[1]

22.    These payments and allowances to Walmart are made in connection with various promotions.  Such promotions include eye-catching advertising displays, multimedia advertising, and advantaged in-store placement relative to other brands and items in the store.  Such displays may include dump bins (freestanding container where customers can easily grab loose items), inline displays (displays integrated directly onto the regular store shelves, highlighting specific products within the aisle), endcap displays (located at the end of aisles, these are highly visible and often used for showcasing new products or special promotions), gondola displays (shelving units that allow for displaying a variety of products across multiple levels), point-of-purchase displays (positioned to capture the attention of customers near a point of purchase), casestacker displays (designed to stack multiple cases of a product on top of each other, ideal for bulk items), shelf talkers (small signage attached to shelves to highlight promotions or product details), floor displays (free-standing displays that sit directly on the floor), and pallet displays (a large platform built on a pallet, used to showcase large quantities of a single product).  An example of one such display can be seen below:

---

[1] *See* Zephyr Teachout, New York City Has the Power to Bring Down Grocery Prices. All Cities Do., New York Times (July 21, 2025), https://www.nytimes.com/2025/07/21/opinion/nyc-grocery-prices.html?smid=nytcore-ios-share&referringSource=articleShare.



**Figure 1**

23.    In exchange for these payments and allowances and to support the resale of Defendant's soft drinks, Walmart will typically feature Defendant's soft drinks in its stores with flashy displays and advertisements, and better placement.  These promotional services and facilities have a measurable effect of driving the resale of Defendant's soft drinks to consumers at Walmart stores.

24.    However, the payments and allowances by Defendant to Walmart go beyond display, advertisement, and placement benefits.  To ensure that Walmart remains their leading retailer, Defendant provides Walmart with promotional payments and allowances beyond the

advertisements and other displays in Walmart stores.  As such, Defendant cannot make the same

promotional payments and allowances available to all other retailers on proportionately equal

terms.

26.    Notwithstanding the above, Defendant still goes beyond providing benefits to

Walmart disproportionately.  Defendant sells its products to Walmart at a discounted price in order

to give them a competitive advantage against other retailers.  This advantage becomes evident

when viewing Walmart's prices of Defendant's Product relative to other competitors and vendors.

26.    On July 1, 2025, the price of a Two-Liter Pepsi Soda was $2.59 at a Lynn, MA

Walmart location.



**Figure 2**

27.    The price of a Two-Liter Pepsi Wild Cherry Soda was $2.20 at a Lynn, MA

Walmart location.



**Figure 3**

28.    The price of a Two-Liter Diet Pepsi Soda was $2.50 at a Lynn, MA Walmart

location



**Figure 4**

29.    The prices listed on the Lynn, MA Walmart website are in stark contrast to the

prices of Two-Liter Pepsi Sodas at other surrounding stores, including Michael G's Handcrafted

Italian and other large retailers.

30.     At a nearby Walgreens located at 1010 Broadway, Chelsea, MA 02150, the prices of a Two-Liter Pepsi Soda, Two-Liter Pepsi Wild Cherry Soda, and Two-Liter Diet Pepsi Soda are each $3.59.



**Figure 5**

31.     One of Pepsi's biggest retailers, 7-Eleven, has a nearby location at 188 Chelsea St, Everett, MA 02149.  Here, the prices of a Two-Liter Pepsi Soda, Two-Liter Pepsi Wild Cherry Soda, and Two-Liter Diet Pepsi Soda are each $3.69.



**Figure 6**

10

32.     Two-Liter Pepsi Sodas and Two-Liter Diet Pepsi Sodas are also sold at CVS, which

has a nearby location at 1010 Revere Beach Pkwy, Chelsea, MA 02150.  Here, the price of a Two-

Liter Pepsi Soda and Two-Liter Diet Pepsi Soda is $3.69.



**Figure 7**



**Figure 8**

33.     Compared to the price of a Two-Liter Pepsi Soda at Walgreens, the price of the same product at Walmart is up to 39% less.  When compared to 7-Eleven and CVS, the difference only becomes more evident.  A Two-Liter Pepsi Soda at Walmart becomes 40% cheaper when compared to 7-Eleven and CVS.

34.     A May 6, 2025 purchase order for the Products at Plaintiff's store shows that Plaintiff purchased a variety of Two-Liter Pepsi Sodas from Defendant.  Plaintiff paid $43.90 for 16 bottles of Two-Liter Pepsi Sodas and $43.90 for 16 bottles of Two-Liter Diet Pepsi Sodas.  This comes to a per-unit cost of $2.74 per bottle.

35.     The per-unit cost of $2.74 per bottle for Defendant's Products paid by Plaintiff to supply his store is higher than the resale price at Walmart.  Thus, Defendant, at best, must be supplying Walmart with Two-Liter Pepsi Sodas for less than $2.59, Two-Liter Diet Pepsi Sodas for less than $2.50, and Two-Liter Pepsi Wild Cherry Sodas for less than $2.20.

36.     Defendant is therefore affording Walmart lower prices than other surrounding stores and large retailers.  As such, this creates a competitive advantage for Walmart at the cost of other stores and retailers.

37.     By creating a competitive advantage for one retailer over others, Defendant places an unfair and oppressive burden on other stores and retailers who are not provided the same advantages as Walmart.  Plaintiff and Class Members must then either charge an artificially inflated price, which reduces their sales, or not purchase any of Defendant's Products.  Either decision places Plaintiff and Class Members at a significant competitive disadvantage.  These lost profits represent a direct monetary injury to each individual retailer.

38.     Plaintiff and Class Members thus suffer tangible harm through the artificially inflated prices of the Product created by Defendant's practices.

39.     By engaging in such a practice with Walmart, Defendant has violated various state unfair and deceptive practices laws including, but not limited to, Massachusetts Unfair and Deceptive Business Practices Act, Mass. Gen. Laws Ch. 93A, *et. seq.* ("93A") and the Robinson-Patman Act, 15 U.S.C. § 13(d), (e).

## III.    The Robinson-Patman Act ("RPA")

40.     In 1936, Congress passed the Robinson-Patman Act ("RPA") to help level a playing field that favored chain stores and other large enterprises over small businesses.  The law prohibits price discrimination and other ways that large businesses may gain an unfair advantage.  Section 2(d) of the RPA generally prohibits sellers of products or commodities from granting advertising and promotional allowances to their customers unless the same allowances are available to all competing customers on proportionally equal terms.  Section 2(e) of the RPA generally prohibits sellers from furnishing services or facilities connected with the processing, handling, sale, or offering for sale of commodities upon terms not accorded to all purchasers on proportionally equal terms.  Together, Sections 2(d) and 2(e) are intended to prevent sellers from evading prohibitions on price discrimination by using other methods, like promotional allowances or services, to favor large customers over smaller businesses.

## IV.    Section 5 Of The Federal Trade Commission Act

41.     Section 5 of the Federal Trade Commission Act prohibits unfair or deceptive actors or practices, as well as unfair methods of competition, in or affecting commerce.  Section 5 also encompasses violations of the Sherman Act, which prohibits certain exclusionary and other anti-competitive conduct.  *See, e.g.*, *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451 (1992); *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001).

42.     Since Section 5 of the FTC Act was passed, the FTC has explained that "the text, structure, and history of Section 5 reaches more broadly than the antitrust laws."[2]

43.     93A gives deference to Section 5 of the FTC Act as interpreted by the Federal Trade Commission ("FTC").  Section 2 of the Massachusetts Unfair and Deceptive Business Practices Act states that "[i]t is the intent of the legislature that in construing paragraph (a)…, the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."

44.     Additionally, the Massachusetts Attorney General has promulgated rules stating that "an act or practice is a violation of M.G.L. c.93A, § 2 if … [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection.  940 Mass. Code Regs. 3.16; *see also Searle v. Nationstar Mortg., LLC*, 2022 WL 3045807, at *8 (D. Mass. Aug. 2, 2022) ("However, an act is a per se violation of Section 93A if it 'fails to comply with existing statutes, rules, regulations or laws ... intended to provide the consumers of this Commonwealth protection.'  Taking the facts alleged as true, the Searles have sufficiently pleaded that Nationstar violated Section 93A by not complying with RESPA.") (citing 940 C.M.R. 3.16).

45.     The FTC has found "price discrimination claims such as knowingly inducing and receiving disproportionate promotional allowances" to be violations of Section 5 of the FTC Act.[3]

46.     Defendant's practices favoring Walmart over smaller retailers constitute unfair methods of competition under the Federal Trade Commission Act.

---

[2] https://www.ftc.gov/system/files/ftc_gov/pdf/P221202Section5PolicyStatement.pdf, pg 2.
[3] *Id.* at 14.

## V. FTC's January 2025 Action Against Defendant

47.    On January 23, 2025, the FTC took action against Defendant for allegations that are substantially similar to this complaint. *Federal Trade Commission v. PepsiCo, Inc.*, 1:25-cv-00664-JMF (S.D.N.Y. 2025) ("FTC Compl."). While redacted from the publicly-filed complaint, the retailer in question is widely understood to have been Walmart.[4]

48.    In this action, the FTC found that the aforementioned conduct constitutes "unfair methods of competition in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45." FTC Compl. ¶ 81.   The FTC also found that this conduct "harms consumers who shop at [non-Walmart] retailers by forcing them to pay higher prices for Pepsi products." *Id.* ¶ 17.

49.    Similarly, the FTC found that Defendant's conduct also violated the RPA. *Id.* ¶¶ 2, 72-76.

### CLASS REPRESENTATION ALLEGATIONS

50.    Plaintiff seeks to represent a Class of all retailers other than Walmart who purchased Products from directly from Defendant (the "Class").

51.    Plaintiff also seeks to represent a Subclass of all retailers other than Walmart who purchased Products directly from Defendant in the Commonwealth of Massachusetts (the "Massachusetts Subclass").

52.    The Class and the Massachusetts Subclass may be referred to collectively as "the Class."

53.    Subject to additional information obtained through further investigation and discovery, the above-described Class may be modified or narrowed as appropriate.

---

[4] *See* https://www.cnn.com/2025/01/17/business/pepsi-walmart-ftc-prices, last accessed August 4, 2025.

54.     At this time, Plaintiff does not know the exact number of members of the aforementioned Class ("Class Members") but believes it numbers in the thousands.  Given the size of the Defendant's operations and the number of retail stores in the United States selling Defendant's Products, Plaintiff believes that Class Members are so numerous that joinder of all members is impracticable.

55.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

> (a)    Whether Defendant misrepresented and/or failed to disclose
>
>        material facts concerning the Product;
>
> (b)    whether Defendant's conduct was unfair and/or deceptive;
>
> (c)    whether Plaintiff and the Class sustained damages with respect to
>
>        the claims asserted, and if so, the proper measure of their
>
>        damages; and
>
> (d)    whether Defendant's conduct violates the Massachusetts Unfair
>
>        and Deceptive Business Practices Act.

56.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased, in a typical consumer setting, Defendant's Product, and Plaintiff sustained damages on account of Defendant's wrongful conduct.

57.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions.  Plaintiff has no interests which conflict with those of the Class.

58.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, especially given the potentially low individual damages suffered by individual class members.

59.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  In addition, individual actions could be dispositive of the interests of the Class even where certain Class Members are not parties to such actions.

### FIRST CLAIM FOR RELIEF
**Violation of Section 2(d) of the Robinson-Patman Act**
**15 U.S.C. § 13(d)**

60.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth herein.

61.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

62.    In consideration for promotional services and facilities furnished by Walmart in connection with the sale and offering for sale of Pepsi soft drinks, Pepsi has provided Walmart with the promotional payments and allowances alleged herein. These payments and allowances, intended to provide Walmart with an advantage in the resale of Pepsi soft drinks, were not and are not made available on proportionally equal terms to all of the disfavored retailers, like Class members, who compete and have competed contemporaneously with Walmart in the sale and distribution of Pepsi soft drinks of like grade and quality at all relevant times.  This discriminatory provision of promotional payments and allowances violates Section 2(d) of the RPA, 15 U.S.C. § 13(d).

63.     Defendant's violation of Section 2(d) of the RPA will continue in the absence of the relief herein requested.

64.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's violation of Section 2(d) of the Robinson-Patman Act because they would not have been forced to charge more for their Products than Walmart if they had been given access to the same advantages that Walmart has.  Thus, Class members lost substantial revenue.

**SECOND CLAIM FOR RELIEF**
**Section 2(e) of the Robinson-Patman Act**
**15 U.S.C. § 13(e)**

65.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth herein.

66.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

67.     Pepsi has furnished Walmart with services in connection with the sale and offering for sale of Pepsi soft drinks.  Specifically, Pepsi has provided Walmart additional services as compared with Class members who are competitors in the resale of Pepsi soft drinks.  Pepsi does not make and has not made these services available on proportionally equal terms to all of the Disfavored Retailers like Class Members, who compete and have competed with Walmart in the sale and distribution of Pepsi soft drinks of like grade and quality at all relevant times.  This discriminatory provision of services violates Section 2(e) of the RPA, 15 U.S.C. § 13(e).

68.     Pepsi's violation of Section 2(e) of the RPA will continue in the absence of the relief herein requested.

69.     Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's violation of Section 2(e) of the Robinson-Patman Act because they would not have

18

been forced to charge more for their Products than Walmart if they had been given access to the same advantages that Walmart has.  Thus, Class members lost substantial revenue.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the nationwide Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiff and Class n all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    An award of statutory penalties to the extent available;

(f)    For pre-judgment interest on all amounts awarded;

(g)    For an order of restitution and all other forms of monetary relief; and

(h)    For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury of all issues so triable.

19

Dated:  August 5, 2025                    Respectfully submitted,

                                          **BURSOR & FISHER, P.A.**

                                          By: */s/ Julian C. Diamond*

                                          Joseph I. Marchese
                                          Julian C. Diamond
                                          Spencer N. Migotsky
                                          1330 Avenue of the Americas, 32nd Floor
                                          New York, NY 10019
                                          Telephone:  (646) 837-7150
                                          Facsimile:  (212) 989-9163
                                          Email:  jmarchese@bursor.com
                                                   jdiamond@bursor.com
                                                   smigotsky@bursor.com

                                          Thomas H. Burt
                                          **WOLF HALDENSTEIN ADLER**
                                          **  FREEMAN & HERZ LLP**
                                          270 Madison Avenue
                                          New York, NY 10016
                                          Tel: (212) 545-4600
                                          burt@whafh.com

                                          Carl V. Malmstrom
                                          **WOLF HALDENSTEIN ADLER**
                                          **  FREEMAN & HERZ LLC**
                                          111 W. Jackson Blvd., Suite 1700
                                          Chicago, Illinois 60604
                                          Tel: (312) 984-0000
                                          malmstrom@whafh.com

                                          *Attorneys for Plaintiff*